UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS RYAN S.,<br><br>                              Plaintiff,<br><br>v.<br><br>LELAND DUDEK, Acting Commissioner of Social Security[1],<br><br>                              Defendant. | Case No.:  24-CV-1057-W-KSC<br><br>**REPORT & RECOMMENDATION TO REMAND CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>**DOC. NOS. 9, 11-12** |

### I.     INTRODUCTION

Plaintiff Curtis Ryan S. seeks review of the Commissioner of Social Security's denial of disability benefits. Doc. No. 1. The parties have filed briefs for review of the denial. Doc. Nos. 9, 11-12. For the reasons set forth herein, the Court RECOMMENDS the denial be REVERSED IN PART and AFFIRMED IN PART and the case be REMANDED for further proceedings.

/ /

/ /

---

[1] Leland Dudek became Acting Commissioner of Social Security on February 19, 2025, and, therefore, is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

1

## II. PROCEDURAL BACKGROUND

On September 15, 2021, plaintiff, a male who was then forty-four years of age, applied for disability insurance benefits claiming disability beginning September 1, 2020. AR 192–93.[2] The Social Security Administration ("SSA") denied plaintiff's claim and denied reconsideration. AR 100–05, 107–12. Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on April 25, 2023. AR 35–60, 113–14. On September 28, 2023, the ALJ issued a decision finding plaintiff not disabled. AR 18–34. The Appeals Counsel denied plaintiff's request for review on May 1, 2024. AR 1–6. Plaintiff then filed this case. Doc. No. 1.

## III. SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found plaintiff had "not engaged in substantial gainful activity since September 1, 2020." AR 23.

At step two, the ALJ found the following severe medically determinable impairments: "nonalcoholic steatohepatitis (NASH) with cirrhosis; type II diabetes mellitus with chronic kidney disease; peripheral vascular disease; hypertension; hyperlipidemia; degenerative joint disease of the bilateral knees; and obesity." AR 23. The ALJ then found plaintiff's "history of other multiple medical problems, including peripheral venous insufficiency and vitamin D insufficiency" were not severe impairments. AR 24.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of those in the Commissioner's Listing of Impairments. AR 24–25.

---

[2] "AR" refers to the Administrative Record lodged on August 19, 2024. Doc. No. 6. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 4 hours in an 8 hour workday; can sit for 6 hours in an 8 hour workday; must use a handheld assistive device for ambulation; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and must avoid even moderate exposure to workplace hazards, such as dangerous machinery and unprotected heights.

AR 25 (citing 20 C.F.R. § 404.1567(b)).

At step four, the ALJ found plaintiff "is capable of performing past relevant work as a Dispatcher, Bus and Trolley" and concluded plaintiff was not disabled. AR 30. The ALJ, therefore, did not proceed to step five. *Id*.

## IV. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotations omitted), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 Fed. App's 196, 198 (9th Cir. 2020). It is "more than a mere scintilla but, less than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). The Court may not impose its own reasoning to affirm the ALJ's decision. *See Garrison*, 759 F.3d at 1010. "[I]f evidence exists to support more than one rational interpretation, [then the Court] must defer to the [SSA]'s decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004) (citing *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). The Court will not reverse the ALJ's decision if any error is harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and . . . a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination.") (internal citations and quotations omitted).

## V.    DISCUSSION

Plaintiff contends the ALJ committed two errors: (1) not providing "specific, clear and convincing reasons" for discounting plaintiff's subjective symptom testimony; and (2) not "properly evaluat[ing] the examining medical source opinion of the consultative internal medicine doctor, Vakas Dial, M.D." Doc. No. 9 at 3, 10. The Court addresses these claimed errors in turn.

### A.    The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ "failed to provide specific, clear and convincing reasons" for discounting plaintiff's subjective symptom testimony. Doc. No. 9 at 3. The Court agrees the ALJ's decision does not meet the applicable legal standards.

Evaluating a claimant's subjective symptom testimony requires a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

  Plaintiff completed a SSA Disability Report, two SSA Exertion Questionnaires. and testified about his pain and physical limitations at the April 25, 2023 hearing. AR 35–59, 215–223, 224–27, 235–37.

  Plaintiff was 6'2" and 372 pounds when he applied for benefits. AR 216. He alleged he was disabled due to bilateral knee osteoarthritis (self-described as "bone-on-bone" in both knees), diabetes, stage 4 nonalcoholic liver cirrhosis, and pancreatis. *Id.*

  He testified he drove for a living until 2012, when he stopped because his "knees got really bad," and transitioned to being a dispatcher because it is a desk job. AR 43–44. He worked that position until he "start[ed] having major issues [related to his liver and pancreas]. . . around 2020." AR 44, 47.

  Plaintiff was referred to a knee specialist in 2016 or 2017. AR 41. He was told he was not a candidate for surgery and was prescribed a cane and exercise equipment. *Id.* He doesn't "sleep well at night because [his] knees and . . . hip hurt[] all night from the bone on bone and the arthritis." AR 47–48. He is "constantly tossing and turning from [his] knees burning." AR 52. Plaintiff can sit for only "30 to 40 minutes" before he needs to "move a little bit," but he doesn't "get too far" because he is prone to falling. *Id.* The most he can walk is 15–20 minutes with his cane. *Id.*

  Plaintiff also testified liver cirrhosis and pancreatis affect his ability to work. AR 51. He reported he became unable to do his last job, which was normally easy for him, because he was "so fatigued," he "couldn't gather [his] thought[s]," and he missed work 10 to 12 days a month due to his health ailments. AR 44–45.

  He experiences "nausea . . . , dizziness, and fatigue" daily. AR 48. He is "so fatigue[d] and drained [he] find[s] [him]self napping a lot during the day." AR 47.

  His liver impairment caused him fatigue, lack of energy, and interfered with his ability to concentrate and focus. AR 51, 55.

  He also reported experiencing "issues almost every day with [his] pancreas" resulting in pain and chronic diarrhea. AR 51. He uses the bathroom 4 to 5 times on good days and 8 to 10 times on bad days. *Id.* His pancreatis has caused 4-to-5-week periods of

chronic diarrhea, which leaves him feeling "totally drained and constantly in the bathroom." AR 48.

He can drive for only 20 to 30 minutes "before the pressure of sitting for an extended time causes [his] gallbladder/pancreas to flare up [with] pain." AR 225. He used to manage his symptoms by taking Creon but, by the April 25, 2023 hearing, he had been off his pancreas medication for about 16 or 17 months because he could not afford it after losing his insurance. AR 48. He was no longer seeing a pancreas or liver specialist for the same reason. *Id.*

Plaintiff reported he "get[s] tired all the time. [He's] always resting because of how [he] feel[s] and [his] knees are always hurting." AR 226. He used to do all the household chores and yard work but "can't anymore," so his children now handle it. AR 226, 237.

At step one the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 26; *accord Vasquez*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce *some* of the pain and other symptoms alleged") (internal quotation marks omitted).

At step two, the ALJ found plaintiff's statements not fully credible because his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 26. The ALJ then summarized plaintiff's medical history and weighed the medical opinions. AR 26–30.

Although defendant contends the ALJ found inconsistencies and conflicts between plaintiff's testimony and the record, Doc. No. 11 at 2–9, the ALJ neither identified what testimony he found not credible nor explained what evidence undermined plaintiff's statements. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

The ALJ's ruling is analogous to what the Ninth Circuit found insufficient in *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). Like that case, the ALJ here "simply stated [a] non-credibility conclusion and then summarized the medical evidence supporting [the] RFC determination" without providing "any reviewable reasons why [he] found [the claimant's] testimony to be not credible." *Id.* at 494. This is "not the sort of explanation or the kind of specific reasons" the ALJ must provide because it does "not link [the specific testimony the ALJ found not credible] to the particular parts of the record supporting [the ALJ's] non-credibility determination." *Id.* (internal quotation omitted).

The Court cannot correct the ALJ's unsupported credibility determination by itself linking plaintiff's testimony to the medical evidence. *Id.* ("[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] to review."); *see also Connett v. Barhhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[W]e are constrained to review the reasons the ALJ asserts." Nor was the ALJ's error harmless because he did not provide enough "reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014); *see also Brown-Hunter*, 806 F.3d at 494.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Because there are arguably inconsistencies between the medical evidence and plaintiff's testimony, it is not clear the ALJ was required to find plaintiff disabled. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remained to be resolved, it was "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits"). Further administrative proceedings are, therefore, appropriate with respect to plaintiff's statements regarding his subjective symptoms.

/ /

/ /

### B.     The ALJ Did Not Err in Evaluating Dr. Sial's Opinion

Plaintiff argues the ALJ erred in finding Dr. Sial's opinion partially persuasive without providing sufficient explanation of supportability and consistency for departing from his recommended physical work restrictions. Doc. No. 9 at 10–14. Specifically, plaintiff contends "the ALJ [did not] address Dr. Sial's assessment that plaintiff needed to periodically alternate between sitting and standing to relieve pain and discomfort." *Id.* at 13. The Court finds no such error.

The ALJ must evaluate the persuasiveness of a medical opinion, including its supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."); *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) ("The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (internal citations omitted). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency "means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ's supportability and consistency conclusions must be "supported by substantial evidence." *Id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). An ALJ may not "cherry-pick" medical evidence to discount a medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ improperly cherry-picked some of [the doctor's] characterizations of [claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment."); *see also Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) ("[T]he

ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

On February 17, 2022, Dr Sial, an Internal Medicine consultant for the SSA, examined plaintiff and ordered bilateral knee x-rays. AR 454–62. Plaintiff reported experiencing lumbar back pain radiating to his left leg, knee pain radiating to his hip, prior knee surgery, and repeated falls. AR 457. Dr. Sial observed no tenderness and normal range of motion in both hips, no instability, tenderness, swelling, or effusion in either knee, and range of motion of knees to flexion at 110 degrees on the right and 100 degrees on the left. AR 460. He also observed plaintiff used a cane to walk and had diminished head-to-toe ambulation and tandem walking, as well as a slow gait with left-side limp. *Id.* The x-rays showed "moderate to severe degenerative disease particularly involving the medial compartment" in the left knee and "moderate degenerative disease particularly involving the medial compartment" in the right knee. AR 455.

Dr. Sial opined plaintiff was "able to lift and carry 20 pounds occasionally and 10 pounds frequently; . . . stand and walk six hours out of an eight-hour day with normal breaks [and a] handheld assistive device; . . . sit six hours out of an eight-hour day . . . periodically alternat[ing] sitting and standing to relieve pain and discomfort; . . . push and pull with no limitations; . . . climb[], balance[e], kneel[], crouch[], crawl[] occasionally, . . . [and] stoop frequently." AR 461.

The ALJ summarized Dr. Sial's opinions, as well as those of state agency physicians Javier Torres, M.D. and S. Garcia, M.D., who opined:

> [Dr. Torres] believed [plaintiff] could perform light work with occasional postural activity, except no climbing of ladders, ropes, or scaffolds, and to avoid moderate exposure to hazards. [AR 71–72]
>
> [Dr. Garcia] opined the same, except [plaintiff] could stand and/or walk 4 hours in an 8-hour workday; the light residual functional capacity was eroded by the medically required assistive device for ambulation and abnormal gait, as well as the consideration of obesity. [AR 88–90]

AR 46.

The ALJ found Dr. Sial and Dr. Torres' opinions partially persuasive and Dr. Garcia's opinion highly persuasive. *Id.* He supported that decision by explaining:

> The ability to lift/carry 20 pounds occasionally and 10 pounds frequently, occasional postural activities, the preclusion from climbing ladders, ropes, or scaffolds, and the use of an assistive device for ambulation are supported by [plaintiff's] history of stage IV NASH liver cirrhosis, type II diabetes mellitus with some clinical findings of edema, abnormal gait and difficulty with tandem walking, and degenerative changes of the bilateral knees with findings of decreased sensation in the lateral medial posterior area. Dr. Garcia's belief the claimant's ability to stand and/or walk was further reduced to 4 hours in an 8-hour workday is supported by the abnormal gait findings and use of the cane, further exacerbated by the claimant's morbid obesity. These opinions are consistent with the claimant's current complaints of chronic "bone on bone" knee pain and subjective reports of fatigue and weakness.

The ALJ then rejected Dr. Sial's opinion that plaintiff must periodically alternate between sitting and standing to alleviate discomfort, stating "[n]o greater restrictions are supported." *Id.* The ALJ explained he found this opinion was not supported because Dr. Sial's "clinical observations and examination findings . . . were otherwise within normal limits; [plaintiff] showed no tenderness, swelling, or deformity of the upper or lower extremities or lumbar spine, range of motion of the upper and lower extremities except for the knees was within normal limits, and strength remained 5/5 throughout." *Id.* The ALJ also found Dr. Sial's sit/stand assessment was inconsistent with plaintiff's treatment record, which "establishes few complaints of chronic joint pain or associated findings." *Id.*

The ALJ's supportability and consistency findings are supported by substantial evidence in the record. *See* AR 454–62 (Dr. Sial finding no tenderness and normal range of motion in hips, no instability, tenderness, swelling, or effusion in knees, and x-rays showing "moderate to severe degenerative disease particularly involving the medial compartment" in the left knee and "moderate degenerative disease particularly involving the medial compartment" in the right knee); *see also* AR 278–434 (9/24/19–6/23/21 Kaiser Permanente treatment notes and lab results for conditions unrelated to joint pain and

containing one reference to "occasional back pain and knee pain" (AR 302)); AR 435–51 (9/9/2021 SharpCare Medical Group treatment notes and lab results for conditions unrelated to joint pain); AR 463–77 (4/22/2022 Kaiser Permanente treatment notes and lab results unrelated to joint pain); AR 487–89 (4/28–29/2022 treatment notes and chest x-ray findings after a fall); AR 486 (5/12/2022 treatment notes for conditions unrelated to joint pain); and AR 485 (6/9/2022 treatment for right ear pain but also noting plaintiff has "bone on bone" pain in both knees and right hip). The Court, therefore, does not recommend further administrative review of Dr. Sial's opinion.

## VI. CONCLUSION

This Court recommends the assigned District Judge enter an order VACATING the final decision of the Commissioner and REMANDING for further proceedings consistent with this Report and Recommendation.

Any objections (or responses thereto) to this Report and Recommendation shall be filed within the time limits allowed by Federal Rule of Civil Procedure 72(b).

**IT IS SO ORDERED.**

Dated: April 25, 2025

Hon. Karen S. Crawford
United States Magistrate Judge